## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| RAPID SETTLEMENTS, LTD. and | § | |
| CAPSTONE ASSOCIATED | § | |
| SERVICES LTD, | § | **CIVIL ACTION NO. H-10-1366** |
| Appellants, | § | |
| | § | |
| v. | § | Bankruptcy Case No. 06-33328 |
| | § | Adversary No. 07-3124 |
| SCOTT D. SHCOLNIK, | § | |
| Appellee. | § | |

## MEMORANDUM AND ORDER

Rapid Settlements, Ltd. and Capstone Associated Services, Ltd. appeal from the United States Bankruptcy Court's January 12, 2009 Interlocutory Order Partially Granting Defendant's Motion for Summary Judgment and Denying Plaintiffs' Motion for Summary Judgment [Doc. # 66 in Adversary No. 07-3124], April 8, 2010 Findings of Fact and Conclusions of Law ("Findings and Conclusions") [Doc. # 82 in Adv. No. 07-3124], and Final Judgment [Doc. # 83 in Adv. No. 07-3124]. The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). Having considered the parties' briefing,[1] the designated bankruptcy record, and applicable legal authorities, the Court **affirms** the Bankruptcy Court's decisions.

---

[1]  *See* Brief of Appellants [Doc. # 10]; Appellee's Brief [Doc. # 14]; Appellants' Reply Brief [Doc. # 20].

## I.  **FACTUAL BACKGROUND**

Appellant Capstone Associated Services, Ltd. ("Capstone") administers alternative risk planning for its clients, sharing clients with Appellant Rapid Settlements, Ltd. ("Rapid Settlements"). In May 2001, Debtor Scott Shcolnik began working for Capstone and, soon thereafter, was elected Capstone's Vice President. In late 2004, Debtor was offered a limited partnership interest in Rapid Settlements, but he failed to sign the partnership agreement. Appellants allege that, in May 2005, Debtor nonetheless began to claim that he had a "nominal ownership interest" in Rapid Settlements. *See* Complaint [Doc. # 1 in Adv. No. 07-3124], ¶ 5. That same month, Debtor was "dismissed from all his offices with Capstone and Rapid Settlements." *Id.*

Appellants allege that Debtor told them he had taken documents from their offices before he left, and that he threatened to use those documents to the companies' detriment. Specifically, Debtor emailed Stewart Feldman, a representative of Rapid Settlements and Capstone, demanding payment of $1,000,000.00 for his partnership interest in Rapid Settlements. Debtor threatened to report alleged wrongdoing by Appellants to federal investigative agencies and to send them the documents if the payment was not made.

The parties' dispute was the subject of a binding arbitration proceeding, in which Appellants obtained injunctive relief against Debtor and an award of $50,000.00 in attorneys' fees.  Debtor attempted to vacate or modify the arbitration award in Texas state court, but the Texas state judge announced on July 18, 2006, that he would confirm the arbitration award and instructed Appellants to provide a proposed order for him to sign.  Four days later, Debtor filed a voluntary Chapter 7 bankruptcy petition.

Meanwhile, in October 2005, Debtor formed Rafael's D'Arte, Inc. ("RDI"). Debtor intended for RDI to become "a fine arts concept center that had a catered art gallery and theater."  *See* Trial Testimony of Charlotte Massie, p. 86.  Debtor was unable to obtain grants for the business and his plans for RDI never materialized.  The company had no assets, no income, and several liabilities.[2]

In May 2006, Debtor sold 100% of the shares of RDI stock to his fiancé, Charlotte Massie, for $1,000.00.  Debtor wanted Massie to have the stock to demonstrate to her family that Debtor was serious about his future marriage to Massie.

---

[2]     The Bankruptcy Court rejected as "excessive" Appellants' request for a third-party valuation of the RDI stock, noting that RDI had no positive value because it was a "closely-held corporation which had no business, no assets, no revenues, and debt." *See* Findings and Conclusions, ¶ 26.

Additionally, Debtor and Massie believed that her purchase of the company would enable it to qualify as a minority-owned business.

The same day in May 2006, Debtor wrote a check to Massie for $1,000.00 to pay bills totalling in excess of $900.00.  At the time, Debtor and Massie were living together, but they maintained separate checking accounts, and their bills were still in only one party's name.

On July 22, 2006, in connection with his Chapter 7 bankruptcy petition, Debtor filed his original schedules and statement of affairs.  Although Debtor listed the $1,000.00 he received for the sale of RDI shares to Massie, it is undisputed that Debtor did not list the $1,000.00 check he wrote to Massie.  It is also undisputed that Debtor did not list the check to Massie in subsequent amendments to the bankruptcy schedules.

Debtor disclosed in his Chapter 7 bankruptcy schedules that he had purchased an $8,000.00 engagement ring for Massie in May 2006.  During the course of Debtor's bankruptcy proceeding, Massie delivered the engagement ring to the Bankruptcy Trustee.  The Trustee filed a motion to sell the engagement ring to a jeweler, but ultimately sold the ring to Capstone for $2,850.00.  Debtor also agreed to repay $6,882.00 to the bankruptcy estate over a period of eighteen months.  The Bankruptcy Court specifically found that Debtor had cooperated with the bankruptcy

trustee and, except for the $1,000.00 check to his fiancé, had "otherwise fully disclosed all assets and transfers."  *See* Findings and Conclusions, ¶ 24.

On February 27, 2007, Appellants filed this Adversary Proceeding, attempting under 11 U.S.C. § 523 to prevent discharge of Debtor's debt to Appellants for the $50,000.00 in attorneys' fees awarded in the arbitration.  Appellants also sought under 11 U.S.C. § 727 to prevent discharge of all Debtor's debts.  On cross-motions for summary judgment, the Bankruptcy Court ruled in Debtor's favor on the § 523 issues.  Following trial, the Bankruptcy Court ruled in Debtor's favor on the § 727 issues.  After entry of Final Judgment, Appellants filed their Notice of Appeal.

## II.    **APPELLANTS' SECTION 523 CLAIMS**

Appellants in their Adversary Complaint [Doc. # 1 in Adv. No. 07-3124] assert that, pursuant to 11 U.S.C. § 523(a)(4) and (a)(6), Debtor is not entitled to discharge of the debt he owed to them.  Section 523(a)(4) of the Bankruptcy Code provides that a "discharge . . . does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).  Section 523(a)(6) provides that a "discharge . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  The

Bankruptcy Court granted summary judgment in favor of Debtor of Appellants' § 523 claims.  *See* Interlocutory Order [Doc. # 66 in Adv. No. 07-3124].

## A.   <u>Standard of Review</u>

The Bankruptcy Court's summary judgment ruling is reviewed *de novo*.  *See In re OCA, Inc.*, 552 F.3d 413, 419 (5th Cir. 2008).  This Court reviews the record to determine whether there are genuine issues of material fact and whether the prevailing party was legally entitled to summary judgment.  *See Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 352 (5th Cir. 2008) (citing *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 328 (5th Cir. 2007)).

"This Court may affirm if there are any grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below."  *In re Scotia Pacific Co., LLC*, 508 F.3d 214, 218-19 (5th Cir. 2007) (quoting *Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 245 (5th Cir. 2006)).

## B.   <u>Section 523(a)(4)</u>

Appellants allege in this case that the $50,000.00 debt to them should not be discharged because Debtor engaged in fraud or defalcation while acting in a fiduciary

capacity.[3]  For purposes of § 523(a)(4), the concept of a fiduciary is more narrow than

under general common law.  *See In re Hickman*, 260 F.3d 400, 404-05 (5th Cir. 2001)

(citations omitted).  Indeed, a "fiduciary capacity" under § 523(a)(4) exists only in

those instances involving express or technical trusts.  *See In re Miller*, 156 F.3d 598,

602 (5th Cir. 1998) (citing *Tex. Lottery Comm'n v. Tran*, 151 F.3d 339, 342 (5th Cir.

1998)).  The fact that the parties are involved in a relationship of trust and confidence

is insufficient to establish a fiduciary capacity for purposes of § 523(a)(4).  *See In re*

*Gupta*, 394 F.3d 347, 352 (5th Cir. 2004) (citing *Matter of Angelle*, 610 F.2d 1334,

1341 (5th Cir. 1980)).

　　　　Appellants failed to present evidence that raised a genuine issue of material fact

regarding whether Debtor acted in a fiduciary capacity under the narrow definition of

that term for purposes of § 523(a)(4).  Appellants argued that Debtor was acting in a

fiduciary capacity because he took documents from Capstone while he was an officer

and director of the company.  *See* Hearing Transcript, pp. 10-11.  The Bankruptcy

Court noted that the argument was not valid "under Fifth Circuit law."  *See id.* at 11.

Because there was no evidence to support a finding of fiduciary capacity, Debtor was

---

[3]　　　In their Motion for Summary Judgment [Appellants' Appendix, Exh. 1], Appellants
argue only that Debtor should be denied discharge as to his debt to Appellants
because he engaged in fraud while acting in a fiduciary capacity.  Appellants do not
present any argument regarding the "embezzlement or larceny" provisions of
§ 523(a)(4).

entitled to summary judgment on the § 523(a)(4) claim.  The Bankruptcy Court's

entry of judgment in Debtor's favor on that claim is affirmed.

### C.    Section 523(a)(6)

Section 523(a)(6) requires a "willful and malicious injury," which means there

is proof of either "an objective substantial certainty of harm or a subjective motive to

cause harm."  *In re Keaty*, 397 F.3d 264, 273 (5th Cir. 2005).  Conduct may qualify

as "willful" for purposes of § 523(a)(6) only if the alleged injury itself is deliberate

or intentional, not merely where there is a deliberate or intentional act that leads to the

alleged injury.  *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

Conduct may qualify as "malicious" if it is engaged in "without just cause or

excuse."  *In re Therous*, 49 F.3d 728, *3 (5th Cir. Feb. 27, 1995) (quoting *Seven

Elves, Inc. v. Eskenazi*, 704 F.2d 241, 245 (5th Cir. 1983)).  To determine whether "a

debtor acted without just cause or excuse, the court must apply an objective standard."

*Id*. (citing *Am. Honda Fin. Corp. v. Grier (In re Grier)*, 124 B.R. 229, 232 (Bankr.

W.D. Tex. 1991)).  The burden of proving denial of discharge under § 523(a)(6) is on

the creditor, who must establish the elements of that claim by a preponderance of the

evidence.  *Id.* (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)).

In this case, it is undisputed that Appellants did not pay the $1,000,000.00

demanded by Debtor.  *See* Hearing Transcript, p. 8.  Instead, the alleged injury to

Appellants from Debtor's demand and corresponding threat was the expense of instituting and prosecuting the arbitration proceeding against Debtor. *See id.* at 8-9. There is no evidence that Debtor at any point intended for Appellants to institute a binding arbitration proceeding and to incur expenses in connection with that proceeding.  Absent evidence that the alleged ***injury*** was deliberate or intentional, Debtor was entitled to summary judgment on the § 523(a)(6) claim.  The Bankruptcy Court's ruling on the issue is affirmed.

## III.   APPELLANTS' SECTION 727 CLAIMS

Appellants assert that, pursuant to 11 U.S.C. § 727, Debtor should be denied a discharge of all his debts.  Section 727 precludes a discharge where the debtor "with intent to hinder, delay, or defraud a creditor . . . has transferred . . . property of the debtor, within one year before the date of the filing of the petition . . .."  11 U.S.C. § 727(a)(2).  Section 727 also precludes a discharge where the debtor "knowingly and fraudulently, in or in connection with the case[,] made a false oath or account . . .."  11 U.S.C. § 727(a)(4)(A).  The creditor "bears the burden of establishing the elements that would prevent discharge."  *In re Laughlin*, 602 F.3d 417, 421 (5th Cir. 2010) (quoting *Cadle Co. v. Pratt (In re Pratt),* 411 F.3d 561, 565 (5th Cir. 2005)).  The exceptions to discharge are "construed strictly against the creditor and liberally in

favor of the debtor." *Id.* (quoting *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009)).

Following trial, the Bankruptcy Court issued Findings and Conclusions [Doc. # 82 in Adv. No. 07-3124] in favor of Debtor on Appellants' § 727(a) claims.

### A.    Standard of Review

A Bankruptcy Court's "findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo*." *In re Texas Pig Stands, Inc.*, 610 F.3d 937, 941 (5th Cir. 2010). A factual finding is clearly erroneous only if, having considered all the evidence, the court is "left with the definite and firm conviction that a mistake has been committed." *In re Morrison*, 555 F.3d 473, 480 (5th Cir. 2009); *Robertson v. Dennis*, 330 F.3d 696, 701 (5th Cir. 2003). Stated differently, a "factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole." *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2005). If there are "two permissible views of the evidence, the [bankruptcy court's] choice between them cannot be clearly erroneous." *In re Bradley*, 501 F.3d 421, 434 (5th Cir. 2007) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)). The district court must give due regard to the bankruptcy court's assessment of witness credibility. *See  Bradley*, 501 F.3d at 434; *Robertson*, 330 F.3d at 701.

## B.    Section 727(a)(2)(A)

To prove that a debtor should be denied discharge under § 727(a)(2)(A), a creditor must show each of the following four elements: (1) a transfer of property; (2) belonging to the debtor; (3) within one year of the filing of the bankruptcy petition; and (4) "with intent to hinder, delay, or defraud a creditor or officer of the estate." *In re Laughlin*, 602 F.3d at 421 (citations omitted). Constructive intent is an inadequate basis to deny a discharge under § 727(a)(2); proof of actual intent is required. *In re Duncan*, 562 F.3d 688, 698 (5th Cir. 2009). "The presence or absence of fraudulent intent is a finding of fact, and is reviewed under the clearly erroneous standard." *Id.* The fact that the transferred property is of little value tends to negate the presence of fraudulent intent, even where the transfer is to a relative. *See Robertson*, 330 F.3d at 702.

It is undisputed that Debtor transferred his check for $1,000.00 to Massie within one year of filing a Chapter 7 bankruptcy petition. Appellants argue that the $1,000.00 check to Massie was not for household expenses, but was instead to enable Massie to pay $1,000.00 for Debtor's shares of RDI stock.

Having considered the evidence presented at trial, the Bankruptcy Court found that the $1,000.00 check to Massie was reimbursement for household bills. *See* Findings and Conclusions, ¶ 9. The Bankruptcy Court found that the RDI stock had

no value at the time Debtor sold it to Massie for $1,000.00.  *See id.*, ¶ 11.  The Bankruptcy Court also found that Massie did not need Debtor's check to pay for the RDI stock because she had two separate lines of credit at two different banks which were available for her to cover the $1,000.00 cost of the stock.  *See id.*, ¶ 10.

The Bankruptcy Court found that Debtor's failure to disclose the check on his bankruptcy schedules was an oversight and was not done with the intent to hide the transfer or to defraud.  *See id.*, ¶¶ 28-29.  This Court has reviewed the full record on appeal, and concludes that the Bankruptcy Court's findings are supported by credible evidence presented at trial, specifically the testimony of Debtor and Massie.  The findings are not clearly erroneous.

Appellants argue that the Bankruptcy Court abused its discretion by excluding evidence of additional, unrelated financial transactions Debtor engaged in before and after giving Massie the $1,000.00 check.  Debtor objected that the evidence was not relevant, and the Bankruptcy Court sustained the objection.  A bankruptcy judge's evidentiary rulings are reviewed for an abuse of discretion.  *See In re Rapine*, 536 F.3d 512, 518 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1008 (2009).  The bankruptcy court has "great latitude" when conducting a bench trial.  *See Matter of Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992) (citing *Cranberg v. Consumers Union of U.S., Inc.*, 756 F.2d 382, 392 (5th Cir. 1985)).  In this case, the Bankruptcy Court

heard a full proffer by Appellants' counsel regarding all the evidence he wanted to present. *See* Trial Tr., pp. 58-62.  The Bankruptcy Court agreed with Debtor that the evidence was not relevant to the issue of intent regarding Debtor's failure to disclose the $1,000.00 check to Massie.  This Court has reviewed the record and concludes that the Bankruptcy Court's evidentiary ruling was not an abuse of discretion, particularly in a bench trial during which Appellants made a full proffer of the evidence to the factfinder.

The Bankruptcy Court's evidentiary rulings were not an abuse of discretion, the findings of fact regarding Debtor's lack of intent to defraud are not clearly erroneous, and the legal conclusions are correct statements of the law.  The Bankruptcy Court's judgment for Debtor on the § 727(a)(2) claim is affirmed.

## C.    <u>Section 727(a)(4)(A)</u>

To establish that a debtor should be denied discharge for making a false oath under § 727(a)(4)(A), the creditor must show that:  (1) the debtor made a false statement under oath; (2) the debtor knew the statement was false; (3) the debtor acted with fraudulent intent; and (4) the false statement was material to the bankruptcy case. *In re Friedheim*, 277 F. App'x 485, 491 (5th Cir. May 8, 2008) (citing *Pratt*, 411 F.3d at 566).  The material omission of an asset or transfer may constitute a false oath. *Id.*

In this case, it is undisputed that Debtor failed to disclose the $1,000.00 check to Massie.  The Bankruptcy Court found, however, that the failure to disclose the check was an oversight, was not done with fraudulent intent, and was immaterial because the $1,000.00 check was of "trivial value" and, therefore, would not have had a demonstrable impact on the bankruptcy estate.  *See* Findings and Conclusions, ¶¶ 23, 27-29.  This Court has reviewed the record and concludes that the Bankruptcy Court's findings are supported by probative evidence, specifically the testimony of Debtor and Massie.  The Bankruptcy Court's judgment in favor of Debtor on the § 727(a)(4) claim is affirmed.

## IV.   **CONCLUSION**

Having reviewed the full record in this case and having applied governing legal authorities, the Court concludes *de novo* that the Bankruptcy Court's summary judgment in favor of Debtor on Appellants' § 523 claims was correct.  The Court also concludes that the Bankruptcy Court's findings of fact on the § 727 claims were not clearly erroneous and the conclusions of law were correct.   Accordingly, the Bankruptcy Court's rulings are **AFFIRMED**.  The Court will issue a separate final order.

SIGNED at Houston, Texas this 8th day of **November, 2010**.

Nancy F. Atlas
United States District Judge